UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARLAN C. BONDS,                     )
                                     )
            Petitioner,              )
                                     )
    v.                               )    CAUSE NO. 3:11-CV-420 WL
                                     )
SUPERINTENDENT,                      )
                                     )
            Respondent.              )

OPINION AND ORDER

Marlan C. Bonds, a *pro se* prisoner, is serving an aggregate 53-year sentence for neglect of a dependent, battery, and habitual offender adjudication in Elkhart County. *State v. Bonds*, No. 20D03-0310-FB-197. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions. (DE 1.)

I.    BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Bonds's burden to rebut this presumption with clear and convincing evidence. *Id*. The Indiana Court of Appeals set forth the disturbing facts underlying Bonds's convictions as follows:

> In October 2003, Bonds was living with his wife and her four-year-old daughter. On the morning of October 11, 2003, Bonds was babysitting the girl while her mother went to work. The facts most favorable to the convictions are that, sometime that morning, Bonds held the child by her feet and her neck and dipped her in a bathtub of scalding water, causing her to suffer third degree burns on her buttocks, vaginal area, and surrounding portions of her body. The child's mother telephoned home to check on the status of things and heard her daughter moaning, so she rushed home and discovered the burns. On October 29, 2003, the State charged Bonds with Class B felony neglect of a dependent and Class D felony battery on a child and later added an habitual offender enhancement charge. Attorney Thomas Wilson entered his appearance for Bonds in January 2004.

> Prior to trial, Wilson conducted pretrial discovery, including discussing the case with Bonds, taking witness depositions, and investigating the case. His investigation and trial preparation included speaking with the doctor/psychiatrist that treated Bonds, who explained that while Bonds was on medication at the time of the incident, he would still have been capable of understanding what he was doing. Accordingly, Wilson did not pursue an insanity defense. Bonds's theory of defense was that the child ingested some of his medications and burned herself in scalding water in the bathtub, and that he was in another room and did not know it was happening. Wilson advised Bonds not to waive his right to a jury trial but, ultimately, Bonds chose to waive a jury trial and proceed with a bench trial, which began on August 9, 2004.
>
> During the second day of trial, Bonds sought to dismiss Wilson as his attorney. The trial court recessed the trial and ordered a competency evaluation. Two doctors submitted reports that Bonds was competent; therefore, at the August 18 status conference, the trial court ruled that Bonds was competent to stand trial, and Bonds agreed with the trial court's determination. The trial court next addressed the outstanding issue of whether Wilson would continue to represent Bonds. Initially, Bonds insisted that he desired to represent himself; however, he eventually acknowledged "the seriousness of [the] charges" and agreed to Wilson's continued representation of him.
>
> The trial resumed on August 25, and that day, Bonds dismissed Wilson as his counsel and elected to proceed pro se. The trial court appointed Wilson as standby counsel. The trial court found Bonds guilty of both charged offenses, adjudged Bonds an habitual offender, and sentenced him to consecutive sentences totaling fifty-three years.

*Bonds v. State*, No. 20A04-1005-PC-315, slip op at *1-2 (Ind. App. Ct. Apr. 18, 2011).

Bonds appealed, claiming that he did not knowingly waive his right to a jury trial as to the habitual offender adjudication; that the trial court abused its discretion when it denied his belated request to assert an insanity defense; and that the trial court abused its discretion at sentencing. *Bonds v. State*, No. 20A03-0412-CR-582, slip op. at *2 (Ind. Ct. App. Apr. 13, 2006). The Indiana Court of Appeals affirmed. *Id.* at *2-10. The Indiana Supreme Court denied his petition to transfer. (DE 13-2 at 6.) Bonds did not seek review in the United States Supreme Court. (DE 1 at 1.)

In May 2008, Bonds filed a petition for post-conviction relief claiming ineffective assistance of trial and appellate counsel on various grounds. *Bonds*, No. 20A04-1005-PC-315, slip op. at *4. Following an evidentiary hearing, the trial court denied the petition. *Id.* at *5. On appeal, Bond raised the following arguments: (1) trial counsel failed to properly investigate his mental health issues; (2) trial counsel failed to file an insanity defense and failed to present a defense of involuntary intoxication; (3) trial counsel failed to properly advise him in connection with his jury trial waiver; (4) appellate counsel failed to argue on direct appeal that he did not have the capacity to waive his jury trial rights; and (5) appellate counsel failed to argue that he was under the influence of "forced psychotropic medications" before and during trial. *Id.* at *6-12. The Indiana Court of Appeals affirmed. *Id.* The Indiana Supreme Court denied his petition to transfer. (DE 13-8 at 7-8.) He did not seek review in the United States Supreme Court. (DE 1 at 2.) In September 2011, Bonds sought leave in the Indiana Court of Appeals to file a successive post-conviction petition raising new claims, including claims involving alleged prosecutorial misconduct. (DE 13-13, 13-14.) The court denied his request. (DE 13-15.)

Thereafter, Bonds filed this federal habeas petition raising the following claims: (1) trial counsel was ineffective on various grounds; (2) appellate counsel was ineffective in failing to raise certain arguments on direct appeal; and (3) the prosecutor committed misconduct before and during trial. (DE 1 at 3-5.)

II.     ANALYSIS

Bonds's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the

3

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may grant an application for habeas relief only if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*,

4

—U.S.—, 131 S. Ct. 770, 786 (2011). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

    A.    Ineffective Assistance of Trial Counsel

Bonds's first claim is that he received ineffective assistance from his trial counsel. Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel——that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, —U.S.—, 130 S. Ct. 13, 16 (2009). To prevail on a claim of ineffective assistance, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices . . . [.]" *Richter*, 131 S. Ct. at 788. The court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding; the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). The court will also "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight." *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010). Furthermore, counsel's performance cannot be evaluated with the benefit of hindsight, and instead "habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, —U.S.—, 131 S. Ct. 733, 741 (2011).

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different."

5

*Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 693. In assessing prejudice, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Richter*, 131 S. Ct. at 791. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792. Where it is expedient to do so, the court may resolve an ineffective assistance claim solely on the prejudice prong, because if the petitioner cannot establish prejudice, there is no need to "grade" counsel's performance. *Strickland*, 466 U.S. at 697.

Bonds's first claim contains multiple grounds, but the crux of his claim is that trial counsel failed to adequately investigate and present evidence pertaining to his mental health problems.[1] (DE 1 at 3.) He claims that counsel was ineffective in failing to interview his doctors; speak with his family and friends; raise an insanity defense; and raise an involuntary intoxication defense. He further claims that counsel "failed to advocate [his] constitutional rights" in allowing him to waive his jury trial rights at a time when he was incompetent. (DE 1 at 3-4.) In rejecting these grounds on post-conviction review, the Indiana Court of Appeals applied a standard consistent with *Strickland*, holding that Bonds had to establish deficient performance falling below an objective standard of reasonableness and a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *See Bonds*, No. 20A04-1005-PC-

---

[1] Within claim one, Bonds also argues that his rights were violated in the post-conviction proceedings. (DE 1 at 3.) If he is attempting to assert this as a distinct claim, it is unavailing, because errors in the post-conviction proceedings do not warrant federal habeas relief. *See Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Jackson v. Duckworth*, 112 F.3d 878, 880-81 (7th Cir. 1997).

315, slip op. at *6. The court concluded that Bonds failed to satisfy either prong of the inquiry.[2]
*Id.* at *6-10. Based on the record, this was not an unreasonable application of *Strickland*.

Under the Sixth Amendment, counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S at 690-91. The decision whether to investigate must be assessed for reasonableness based on the circumstances, "applying a heavy measure of deference to counsel's judgments." *Id.* at 691. To establish prejudice in connection with counsel's failure to investigate, the petitioner must make a "comprehensive showing" of what further investigation would have revealed. *United States v. Zillges*, 978 F.2d 369, 373 (7th Cir. 1992). Furthermore, counsel is given significant discretion in selecting a trial strategy based on the information known to him at the time. *See Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011) ("So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel."); *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (observing that as long as counsel's reasons behind his trial strategy were not "so far off the wall that we can refuse the usual deference that we give tactical decisions by counsel, his performance will not qualify as deficient.").

---

[2] The respondent suggests that claim one is procedurally defaulted because the state court denied it on an adequate and independent state ground. (*See* DE 14 at 8.) As the respondent points out, the state appellate court noted that a defendant who represents himself cannot complain about receiving ineffective assistance of counsel. *See Bonds*, No. 20A04-1005-PC-315, slip op. at *7. Nevertheless, the court went on to consider and reject Bonds's ineffective assistance claims on the merits. *Id.* at *7-11. Under these circumstances, federal review is not barred. *Harrison v. McBride*, 428 F.3d 652, 664 (7th Cir. 2005) (for adequate and independent state ground doctrine to apply the state court must "clearly and expressly" base its judgment solely on a state procedural bar rather than the merits).

Here, contrary to Bonds's assertions, the record demonstrates that counsel made substantial efforts to investigate his mental health problems prior to trial. In the course of his pretrial preparations, counsel spoke with Bonds and his mother "enumerable" times, obtained Bonds's mental health records, and met with Bonds's treating psychiatrist. (PCR Tr. at 137-60; PCR Pet.'s Ex. G.) Bonds's psychiatrist told counsel that despite his mental illness and the medications he was taking, Bonds would have been aware of his actions and the danger posed by putting the victim in scalding water. (PCR Tr. at 134-35.) Additionally, during their pretrial discussions, Bonds told counsel that he was not present in the bathroom when the victim was scalded and that she had injured herself. (PCR Tr. at 142-44.) Based on this information, counsel reasonably determined that an insanity defense was not viable, since under such a defense the defendant admits to committing the offense but argues that he could not appreciate the wrongfulness of his conduct. *See* IND. CODE § 35-41-3-6 ("A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense."). Indeed, in the post-conviction proceedings Bonds acknowledged on the record that he had not wanted to assert an insanity defense prior to trial. (PCR Tr. at 31.)

Bonds also faults counsel for failing to pursue an involuntary intoxication defense, but this defense was not viable either, since Bonds disclaimed being in the room at the time the victim was injured. *See* IND. CODE § 35-41-3-5; *see also Alfrey v. State*, 960 N.E.2d 229, 233 (Ind. Ct. App. 2012) (explaining that under Indiana involuntary intoxication defense defendant admits that he engaged in the prohibited conduct but argues that he did so while he was intoxicated either without his consent or under circumstances whereby he did not know the substance would cause intoxication). Such a defense also had little likelihood of success, given

8

the opinion of Bonds's treating psychiatrist that he would have been able to recognize the danger posed by his actions notwithstanding his medications. (PCR Tr. at 134-35, 164.) Furthermore, as counsel pointed out at the post-conviction hearing, there was nothing "involuntary" about Bonds's use of medications at the time he committed the offense. (PCR Tr. at 164.) To the extent Bonds argues that his mental health issues were generally relevant and that counsel should have submitted all his prior medical records and presented testimony on this issue, this argument is unavailing, because Indiana does not recognize a defense of diminished capacity. *See Cardine v. State*, 475 N.E.2d 696, 698 (Ind. 1985) (Indiana does not recognize legal defense of diminished capacity); *Marley v. State*, 747 N.E.2d 1123, 1128 (Ind. 2001) (under Indiana law a defendant may not submit evidence relating to mental disease or defect except through an insanity defense).

Based on the information known to him, counsel reasonably decided to forego these defenses and instead adopted a defense theory that the victim had accidentally injured herself. He made arguments to this effect and elicited testimony from the state's witnesses in support of the defense theory. (*See* Trial Tr. at 7-9, 54-75, 165-67, 245-50.) He also elicited testimony attacking the credibility of the victim's mother, one of the state's primary witnesses, suggesting that she had concocted the story blaming Bonds for what occurred (and coached the victim to do the same) so she did not lose custody of the child. (*See* Trial Tr. at 137-42, 211-20.) Additionally, despite that counsel could not legitimately present an insanity defense, he was able to get information about Bonds's mental health history before the court. Specifically, he called Bonds's treating psychiatrist as a witness, and had him testify regarding a letter he wrote on Bonds's behalf prior to the date of the offense, stating that Bonds could not provide child care

9

for the victim due to his mental health issues.³ (*See* Trial Tr. at 189-93.) In the course of questioning the doctor, counsel was able to present a considerable amount of testimony—over the state's objection—about Bonds's history of mental problems and the possible effects of his medications. (*Id.* at 189-211.)

Counsel did not have an opportunity to fully effectuate his trial strategy, however, because Bonds fired him in the middle of the trial and took over his own defense. (*See* Trial Tr. at 261-62.) While proceeding on his own, Bonds continued to pursue the defense theory that the victim had injured herself while he was in another room. (Trial Tr. at 277-425.) He testified under oath to that effect during the defense case-in-chief. (Trial Tr. at 356-425.) Based on Bonds's own sworn testimony, an insanity defense was not viable and indeed, his mental health problems were wholly irrelevant.⁴ Bonds has not demonstrated that counsel was deficient with

---

³ The letter, which was addressed to a state child care program called "Step Ahead," stated as follows: "Ms. Bonds needs Step Ahead assistance in order to provide a baby sitter for her four year old daughter. Her husband Marlan is on medication for a nervous condition and is not able to maintain adequate attention to his step-daughter's personal care needs. Therefore it is not appropriate for him to provide that care at this time." (Def.'s Appx., Volume II, at 245.) During her testimony, Bonds's wife explained that she tried to obtain state assistance to pay for a babysitter because Bonds was concerned that providing child care for the victim would "mess up" his disability claim. (Trial Tr. at 22.)

⁴ Bonds's account was that he beat the victim with a belt because he thought she had gotten into his medications; during the beating she urinated and defecated in her pants. He told her to go take a bath while he cleaned up the mess. He testified that he heard her run the water, then slip in the tub, "gasp" for air and call out to him, telling him the water was too hot. He testified that he did not view this as an urgent situation, and so instead of going to check on her he continued to clean up and then went outside to smoke a cigarette. He later went in the bathroom, discovered the water was too hot, let it out, and ran another bath for her. He testified that she never complained about being injured and he did not notice her third degree burns until some time later. (Trial Tr. at 357-425.) A burn specialist who treated the victim testified that her injuries were inconsistent with her having gotten into or out of the tub on her own; the only possible explanation he found for the location and extent of her injuries was that someone had lifted her up, put her in the scalding water, and held her there for sometime. (Trial Tr. at 225-50.)

10

respect to his pretrial investigation or his trial strategy, nor has he made the requisite showing of prejudice.

Bonds next argues that counsel improperly allowed him to waive his jury trial rights at a time when he was heavily medicated and incompetent. (DE 1 at 3-4.) Relatedly, Bonds argues that counsel should have challenged the "involuntary administration of psychotropic medications" he was subjected to during the pretrial and trial proceedings. (*Id.*) At the post-conviction hearing, counsel testified that he had no knowledge that Bonds was subjected to "involuntary administration" of medications during trial. (PCR Tr. at 113-15.) Although he recalled Bonds not being entirely satisfied with his medical treatment at the jail, counsel did not understand him to be complaining about forced medication. (*Id.* at 114-15.) Additionally, the record reflects that Bonds took the same medications during trial that he did prior to committing the offense, and at the time of trial he was actually taking a lower dosage. (*See* Pet.'s PCR Appx. at 385; *see also* Trial Tr. at 193.) One of the psychiatrists who evaluated Bonds during trial noted that he was currently on a "very small dose" of his medications.[5] (Pet.'s PCR Appx. at 389.) Bonds later stated on the record that his medications had been reduced and that he no longer felt "overmedicated" as he had at the time of the offense. (Tr. of Hearing Aug. 18, 2004, at 33.) Bonds has not established deficient performance by counsel on this ground, nor has he made the requisite showing of prejudice.

---

[5] The doctor opined that Bonds's past mental problems may have been caused by his extensive use of illegal drugs, including crack cocaine, rather than by a mental illness. (Pet.'s PCR Appx. at 389.) In the doctor's view this explained why Bonds was "so lucid" on a low dose of the medications. (*Id.*) Since Bonds had not used illegal drugs for a period of at least 10 months, the doctor noted that his symptoms had "cleared up quite nicely." (*Id.*)

Regarding the jury trial waiver, the record reflects that Bonds signed the waiver himself acknowledging that he knowingly and voluntarily waived his right to proceed before a jury. (Pet.'s PCR Appx. at 412-13.) Counsel testified at the post-conviction hearing that Bonds did so against his advice, and despite his attempts to convince both Bonds and his family members that a bench trial was not advisable. (PCR Tr. at 138-41; *see also* Def.'s Appx. at 493-94.) Counsel further testified that he had many pretrial discussions with Bonds and had no reason to believe that Bonds was incapable of making an informed decision about his jury trial rights. (PCR Tr. at 139-41.) The record reflects that at the time of trial Bonds had a high school diploma and had significant experience with the criminal justice system, including two prior felony cases that went to trial. (Tr. of Hearing Aug. 18, 2004, at 26-28.)

Although Bonds makes self-serving allegations about the poor state of his mental health during trial, the record does not bear out his allegations. In addition to counsel's testimony outlined above, two independent psychiatrists evaluated Bonds in the middle of trial and found him fully competent. They were appointed by the court after Bonds made statements indicating that his medications were affecting his memory. The trial judge stated that he was requiring Bonds to undergo a competency evaluation out of "an abundance of caution," even though he had "seen nothing during the course of any proceedings held connection with this case which would lead me to believe that you are incompetent to stand trial." (Trial Tr. at 254.)

Thereafter, the two psychiatrists evaluated Bonds and issued their conclusions. They both found him competent, and one of the doctors concluded that Bonds may have been malingering or trying to cause a diversion during his trial. Specifically, Dr. Gary Seltman concluded:

> At present, Mr. Bonds does not appear to suffer from any particular mental problem that would interfere with his ability to understand and participate in his own defense. He appears to be well aware of the nature of the charges against him, the possible

> consequences if found guilty, and is also well aware of the players involved in the judicial process. Some of his behavior appears to be a bit manipulative and possibly aimed at creating a diversion, and there is a fair amount of rationalization and projection of blame for the difficulties he is facing.

*Bonds*, No. 20A03-412-CR-582, slip op. at *3-4. Similarly, Dr. Salvadore Ceniceros concluded:

> [Bonds] is able to speak to me with a very good vocabulary, able to present information in a clear and succinct manner, is very well organized in his though process, and certainly is not suffering from any mood problems currently, nor any thought disorder at this time. He is able to explain to me the judicial system in a lot of detail, indicating that if he would have gone to college, he would have liked to have become an attorney. He certainly has the jargon down, as well as a lot of the rules of evidence, and again, is able to quote these to me quite clearly. . . . It is apparent that he is certainly competent to stand trial and help his defense attorney. He is actually quite competent to defend himself, if necessary, in the sense that he is very familiar with the legal system and the rules of evidence. There is no evidence at all that would suggest that the medication he is taking currently is in any way interfering with his cognition, with his ability to think, or his memory. If anything, they have cleared his memory quite nicely, and have cleared any symptoms that he may have had in the past. He appears to be quite stable at this time.

(Pet.'s PCR Appx., Vol. III, at 458.) Although Bonds appears to fault counsel for not requesting a third evaluation, he does not provide any basis for concluding that the two court-appointed psychiatrists were inadequate.

Furthermore, a review of the trial transcript reflects that Bonds was a coherent, active participant in the trial proceedings. While representing himself, he was able to make and respond to objections, present his own testimony, cross-examine the state's witnesses, and make detailed arguments in support of his defense theory and in support of a request for leniency at sentencing. (*See* Trial Tr. at 277-461.) It is particularly apparent from his cross-examination of the victim that he had a keen awareness of the critical issues in his case. Among other things, he tried on multiple occasions to elicit testimony from her that she routinely bathed herself, apparently to bolster his account that he was not in the bathroom at the time her injuries occurred. (*See* Trial Tr. 277-304.)

13

It is also noteworthy that there is evidence in the record suggesting Bonds has in the past exaggerated or feigned symptoms of mental illness when it suited his purposes. Bonds's wife testified that prior to the date of the offense, Bonds sought mental health treatment so that he could get disability payments and stop working. (*See* Trial Tr. at 18-21.) She testified that when he was evaluated he tried to convince the doctors he was "crazy," lied about his activities, and acted differently than he did at home. (*Id.*) She further testified that he never took any of his prescribed medications until a day or two before he had a scheduled blood test. (*Id.* at 20.)

During trial, Bonds appeared to follow this same pattern, raising concerns about his mental health when he thought it would help him, disclaiming any problems when it did not. For instance, during the course of discussions about whether he should be allowed to represent himself, Bonds complained that counsel had not asked a witness questions Bonds wanted him to ask. (Trial Tr. at 250-51.) The judge told him to write out his questions so he could review them while the witness was still present. (*Id.* at 251.) Bonds responded that he could not remember his questions because his medications effected his memory. (*Id.*) The court thereafter inquired, "So you're telling me that your medication interferes with your ability to remember. . . and to reason?" (*Id.*) Bonds responded in the affirmative. (*Id.*) The court then stated, "Very well. I'm not going to grant your request then, that you represent yourself. (*Id.*) Bonds then backtracked, arguing that his medications were "down now," and that he felt competent to represent himself during the remainder of the trial. (*Id.* at 253; *see also* Tr. of Hearing, Aug. 18, 2004, at 33.) It is also noteworthy that one of psychiatrists who evaluated Bonds believed that his behavior may have been geared toward manipulating the system or causing a diversion during his trial. *See Bonds*, No. 20A03-412-CR-582, slip op. at *4.

14

Based on the record, Bonds has not established that his trial counsel was deficient on any of the above grounds or made the necessary showing of prejudice. The state court's rejection of this claim was not unreasonable, and accordingly, federal habeas relief is not warranted.

B.       Ineffective Assistance of Appellate Counsel

Bonds's next claim is that his appellate counsel was ineffective in failing to raise certain arguments on direct appeal. (DE 1 at 4.) A claim of ineffective assistance of appellate counsel is also subject to the *Strickland* analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). On the deficiency prong, the petitioner must show that counsel failed to present a "significant and obvious" issue on appeal. *Id.* at 790. However, counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Therefore, "[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Wallace v. Davis*, 362 F.3d 914, 919-20 (7th Cir. 2004). On the prejudice prong, the petitioner must demonstrate that if the argument had been raised, there is "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard*, 225 F.3d at 790. Where the underlying argument has no merit, an ineffective assistance claim cannot succeed, because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

Here, Bonds faults his appellate counsel for not arguing that he was incompetent to waive his jury trial rights, and relatedly, that his mental illness and the "involuntary medical treatment" he was subjected to during trial rendered him unable to assist in his own defense. (DE 1 at 4.) In

15

rejecting Bonds's claim on post-conviction review, the Indiana Court of Appeals concluded that he failed to establish deficient performance or make the necessary showing of prejudice. *See Bonds*, No. 20A04-1005-PC-315, slip op. at *11-12. Based on the record, this was not an unreasonable application of *Strickland*.

Bonds's appellate counsel did not testify at the post-conviction hearing, but the record reflects that he was fully aware of Bonds's mental health issues and the fact that he had waived a jury trial. Counsel filed a 31-page appellate brief and a 12-page reply brief on Bonds's behalf, raising three arguments: (1) Bonds's jury trial waiver was not valid as to the habitual offender adjudication; (2) the trial court erred when it denied him the right to present evidence pertaining to his mental illness and to assert an insanity defense; and (3) the trial court abused its discretion in imposing an enhanced sentence. (*See* DE 13-3; *see also* DE 13-5.) If successful, these arguments could have resulted in a substantial reduction of Bonds's sentence and/or a new trial. Although these arguments ultimately did not prevail, the Indiana Court of Appeals found them significant enough to warrant 10 pages of discussion. *See Bonds*, No. 20A03-0412-CR-582, slip op. at *1-10. Based on the record, Bonds has not overcome the presumption that counsel made a reasonable strategic decision in selecting arguments for appeal.

Furthermore, he has not made the necessary showing of prejudice, because the two arguments he raises would have had little chance of success. *See Stone*, 86 F.3d at 717. Under Indiana law, direct review is limited solely to consideration of the trial record. *See Jewell v. State*, 887 N.E.2d 939, 941 (Ind. 2008). As is fully outlined above, there is little evidence in the trial record to indicate that Bonds was incompetent or otherwise unable to assist in his own defense. Instead, the record reflects that he was lucid, attentive, and fully competent to make decisions

during his trial. Two court-appointed psychiatrists concluded as much when they evaluated him during trial. *Bonds*, No. 20A03-412-CR-582, slip op. at *3-4.

Given the substantial deference that is owed to counsel's strategic decisions, and the unlikelihood that either of the two arguments Bonds points to would have resulted in a reversal, he has not demonstrated that he received ineffective assistance from appellate counsel. The state court's rejection of this claim was not unreasonable and, therefore, federal habeas relief is not warranted.

    C.    Prosecutorial Misconduct

Bonds's final claim is that the prosecutor committed misconduct in various ways before and during trial. (DE 1 at 4-5.) In essence, Bonds claims that the prosecutor knew he was incapable of being left in charge of his step-daughter, and therefore should not have pursued charges against him. (*Id.*) The respondent argues that this claim is procedurally defaulted and cannot be reviewed on the merits. (DE 14 at 18-20.) The court agrees.

Before considering the merits of a claim, the court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Interests of comity require that the state courts be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review, including with the state court of last resort. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This requires him to raise his claim "at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis*, 390 F.3d at 1025-26.

17

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54.

Here, Bonds did not raise any claim regarding prosecutorial misconduct on direct review or in the post-conviction proceedings, and the time for doing so has long passed. *See Bonds*, No. 20A03-0412-CR-582; *Bonds*, No. 20A04-1005-PC-8. In 2011, he presented various grounds of prosecutorial misconduct in a request to proceed with a successive post-conviction petition filed with the Indiana Court of Appeals. (DE 13-14.) However, that request was denied. (*See* DE 13-15.) Therefore, Bonds never presented his prosecutorial misconduct claim in one complete round of state review, including with the Indiana Supreme Court. Bonds does not respond to the state's procedural default argument or provide grounds for excusing his default; in fact, he does not address the prosecutorial misconduct claim at all in his 79-page traverse. (*See* DE 23-1.) Accordingly, the court does not reach this claim on the merits.

D. Certificate of Appealability

As a final matter, the court must consider whether to grant Bonds a certificate of appealability. 28 U.S.C. § 2253(c); RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial

18

of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons fully explained above, Bonds has not made a substantial showing of the denial of a constitutional right, nor is there a basis to conclude that jurists of reason would debate the outcome of the petition or find a reason to encourage Bonds to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

III.     CONCLUSION

For the reasons set forth above, the court DENIES the petition (DE 1) and DENIES the petitioner a certificate of appealability.

SO ORDERED.

ENTERED: September 7, 2012

                                             s/William C. Lee
                                            William C. Lee, Judge
                                            United States District Court